E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Assistant United States Attorney
Violent & Organized Crimes Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Major Frauds Section
    1300/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2400
    Facsimile: (213) 894-0142
    E-mail:    kevin.butler@usdoj.gov
              ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-CR-529-MWF(A) |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | |
| FEMI FELIX-UKWU, and MONIQUE FERGUSON, | Trial Date: March 28, 2023 |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Ali Moghaddas, hereby submits its Trial Memorandum.

//

//

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   STATEMENT OF CHARGES / CASE STATUS.............................1

II.  STATEMENT OF CASE..............................................1

     A.   Defendants' Conspiracy to Book Non-Revenue Flights........1

     B.   Defendants' Manufacture of ID's, and Participation in
          Conspiracy................................................2

     C.   Government's Witnesses and Time Estimates.................3

III. ELEMENTS OF THE OFFENSES.......................................4

     A.   Count One - Conspiracy to Commit Wire Fraud (Both
          Defendants)...............................................4

     B.   Count Two - Conspiracy to Possess, Use, and Transfer a
          Means of Identification (Both Defendants).................5

     C.   Count Four – Unlawful Possession, Use, and Transfer of
          a Means of Identification (Defendant Ukwu)................6

     D.   Count Eight – Aggravated Identity Theft (Defendant
          Ukwu).....................................................6

IV.  LEGAL AND EVIDENTIARY ISSUES...................................7

     A.   Hearsay...................................................7

          1.   Defendants' Statements...............................7

          2.   Co-Conspirator Statements............................7

     B.   Authentication and Foundation.............................8

     C.   Character Evidence.......................................10

     D.   Cross-Examination of Defendants..........................11

     E.   Jury Nullification.......................................12

V.   CONCLUSION....................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF CHARGES**

Defendants Femi Felix-Ukwu and Monique Ferguson are charged with, inter alia, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to possess, use, and transfer a means of identification, in violation of 18 U.S.C. § 1028(f).  Defendant Ukwu is separately charged with unlawful possession, use, and transfer of a means of identification, in violation of 18 U.S.C. § 1028(a)(7), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

Jury trial is set for March 28, 2023 at 8:30 a.m.  The government anticipates calling approximately ten witnesses in its case-in-chief, which it expects to last approximately two trial days.  Depending on the defense case, the government anticipates a short rebuttal, which may include one to two witnesses.

**II.   STATEMENT OF CASE**

**A.   Defendants' Conspiracy to Book Non-Revenue Flights**

Beginning on a date unknown but at least as early as February 2016, and continuing until a date unknown but at least as late as in or about November 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants knowingly combined, conspired, and agreed with others to commit wire fraud.  Specifically, defendants and their co-conspirators sold or otherwise provided others stolen and unauthorized information pertaining to Mesa Airlines ("Mesa") flight crew, including their names, dates of hire, and employee identification numbers (the "Mesa employee information"), needed to book non-revenue crew tickets on Spirit Airlines ("Spirit").  A non-revenue crew ticket was a ticket for a

seat on a flight that an airline provided to other airline crew at no cost to the participating airline's crew member.  Using the Mesa employee information as well as a verification code provided by defendants and their co-conspirators, more than 100 fraudulent travelers booked non-revenue crew tickets for Spirit flights through the web portal maintained by Spirit ("Spirit Web Portal").  In so doing, they misrepresented that they were employees of Mesa.

In furtherance of the conspiracy, defendants and their co-conspirators flew on Spirit flights using the non-revenue tickets booked through the Spirit Web Portal.  To make these reservations, defendants used, without authorization, the identification number, date of hire, and verification code to Mesa employees T.T. and L.M.  Specifically, defendant Ferguson flew at least twice using T.T.'s identifying information, and defendant Ukwu flew approximately 47 times using L.M.'s identifying information.

### B. Defendants' Manufacture of ID's, and Participation in Conspiracy

In approximately 2017, Spirit and Mesa airlines became aware of the foregoing fraudulent scheme to obtain non-revenue crew tickets for fraudulent travelers.  Accordingly, in February 2017, Spirit implemented a policy requiring gate agents to check the purported Mesa crew member's employee badge before allowing the passenger to board.  At this point, many of the fraudulent travelers, including witnesses who will testify at trial, recognized the fraudulent nature of this scheme and did not further travel using non-revenue crew tickets.  However, notwithstanding this obvious red flag, defendants here chose to further their conspiracy by fraudulently manufacturing and selling fraudulent Mesa employee identification cards to board

flights. These identification cards purported to identify the fraudulent traveler as a Mesa employee, contained the employee identification number and date of hire of a true Mesa employee, and contained the name of the fraudulent traveler. In furtherance of this conspiracy, on or about February 21, 2017, after the Spirit policy change, co-defendant Hubbard Bell emailed defendant Ukwu a photo of his Mesa employee identification card. Thereafter, defendants conspired with one another to manufacture and produce at least six fraudulent Mesa employee identification cards, including one for each of the defendants. These employee identifications constitute counterfeit access devices.

As noted above, defendant Ukwu has been charged with additional counts, including unlawful possession, use, and transfer of a means of identification, and aggravated identity theft. The evidence at trial will show that defendant Ukwu not only manufactured the fraudulent Mesa employee identification cards, but he also produced one for himself, which he used to travel after the Spirit policy change. In doing so, defendant Ukwu, without authority or authorization, used a means of identification, specifically for a Mesa flight attendant, L.M. For such brazen conduct, defendant has been charged with the foregoing additional counts.

### C. Government's Witnesses and Time Estimates

At trial, the government anticipates calling the following individuals (this list is subject to further modification both in additions and omissions, as well as changes to the parties' time estimates):

3

| #  | Gov't Witnesses | DX Est. | CX Est. |
|----|----------------|---------|---------|
| 1  | Kevin Funk | 30 | 30 |
| 2  | Mark Pietz | 30 | 30 |
| 3  | Ryan Heaton | 30 | 30 |
| 4  | Leon Spencer | 15 | 15 |
| 5  | Khalid Dadabhoy | 10 | 10 |
| 6  | Willie Harvey | 10 | 10 |
| 7  | Demetrius Walker | 10 | 10 |
| 8  | Nadia Deravine[1] | 10 | 10 |
| 9  | Latressa McVey | 15 | 15 |
| 10 | Torrey Theall | 15 | 15 |
| **Totals** | | ~ 3 hours | ~ 3 hours |

**III. ELEMENTS OF THE OFFENSES**

    **A.   Count One - Conspiracy to Commit Wire Fraud (Both Defendants)**

Count One charges both defendants with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The elements are as follows: (1) beginning on a date unknown but at least as early as January 21, 2017 and continuing to in or around November 2017, there was an agreement between two or more persons to commit wire fraud; and (2) defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The conspiracy involves an agreement to commit the substantive offense of wire fraud. The elements of wire fraud are as follows: (1) defendant knowingly participated in a scheme or plan to defraud,

---

[1] As discussed at the pretrial conference, the parties agreed that Ms. Deravine, who is in the third trimester of her pregnancy, may testify via video teleconference.

4

or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (4) the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

### B. Count Two - Conspiracy to Possess, Use, and Transfer a Means of Identification (Both Defendants)

Count Two charges both defendants with conspiracy to possess, use, and transfer a means of identification, in violation of 18 U.S.C. § 1028(f). The elements are as follows: (1) beginning on a date unknown but at least as early as January 21, 2017 and continuing to in or around November 2017, there was an agreement between two or more persons to commit possession, transfer, or use of another person's means of identification without lawful authority; and (2) defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The conspiracy involves an agreement to commit the substantive offense of possessing, transferring, or using another person's means of identification without lawful authority. The elements of the substantive offense are as follows: (1) defendant knowingly transferred, possessed, or used a means of identification of another person; (2) defendant did so without lawful authority; (3) defendant transferred, possessed, or used the means of identification in connection with conspiracy to commit wire fraud, as charged in Count

5

One; and (4) the transfer, possession, or use of the means of identification of another person was in or affected commerce between one state and other state, or between a state of the United States and a foreign country.

### C. Count Four – Unlawful Possession, Use, and Transfer of a Means of Identification (Defendant Ukwu)

Count Four charges defendant Ukwu with unlawful possession, use, and transfer of a means of identification, in violation of 18 U.S.C. § 1028(a)(7). The elements are as follows: (1) defendant knowingly transferred, possessed, or used a means of identification of another person; (2) defendant did so without lawful authority; (3) defendant transferred, possessed, or used the means of identification in connection with conspiracy to commit wire fraud, as charged in Count One; and (4) the transfer, possession, or use of the means of identification of another person was in or affected commerce between one state and other state, or between a state of the United States and a foreign country.

### D. Count Eight – Aggravated Identity Theft (Defendant Ukwu)

Count Eight charges defendant Ukwu with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). The elements are as follows: (1) defendant knowingly possessed without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) defendant did so during and in relation to the offense charged in Count Four of the indictment, namely, the transfer, possession, or use of another's means of identification.

## IV. LEGAL AND EVIDENTIARY ISSUES

### A. Hearsay

Federal Rule of Evidence 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

#### 1. Defendants' Statements

The government intends to admit statements made by defendants, including e-mail communications between themselves and others. Statements by a party opponent when offered against that party are excluded from the hearsay definition. Fed. R. Evid. 801(d)(2)(A). Thus, defendants' statements may be admitted against the defendant who made the statements. Where these statements are not in furtherance of the charged scheme, the government asks that the Court give a limiting instruction so that the jury understands that it is not to consider the statement as evidence against the other defendants.

When the government offers some of a defendant's prior statements, the door is not thereby opened to the defendant to introduce all of his or her out-of-court statements because, when offered by the defendant, the statements are hearsay. See Fed. R. Evid. 801(d)(2). Accordingly, exculpatory statements made by a defendant are hearsay and are not admissible at trial, when offered by the defendant. See Fed. R. Evid. 801(d), 802; United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

#### 2. Co-Conspirator Statements

The government may also admit statements made by co-schemers made in furtherance of the scheme, including e-mail communications

7

sent or received by defendants' co-schemers. A statement made by one co-conspirator or co-schemer during the course and in furtherance of the conspiracy or scheme may be used against another conspirator or co-schemer because such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987). A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is needed. Bourjaily, 483 U.S. at 183-84; United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir. 1987), amended, 846 F.2d 591 (9th Cir. 1988). Rule 801 (d)(2)(E) requires a foundation that: (1) the declaration was made during the life of the conspiracy; (2) the declaration was made in furtherance of the conspiracy; and (3) there is sufficient proof of the existence of the conspiracy and defendant's connection to it. Bourjaily, 483 U.S. at 173, 181; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990). These foundational requirements must be established by a preponderance of the evidence. Bourjaily, 483 U.S. at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989). To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]." United States v. Aramula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v. Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988).

### B. Authentication and Foundation

Federal Rule of Evidence 901 (a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

claims." Under Rule 901(a), evidence should be admitted, despite any challenge, once the government makes a *prima facie* showing of authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 925 F.2d 990, 996 (9th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985). The government need not establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. See United States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983). A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; Smith, 893 F.2d at 1579.

Here, as discussed during the pretrial conference, the government may move to introduce select e-mail communications sent by co-defendant Bell and others related to the scheme. Although the government does not anticipate any authenticity objections from the defense (given that they too plan on admitted select e-mails from Mr. Bell's account), the government nonetheless raises the issue here. If necessary, the government's previous case agent, FBI Special Agent Ryan Heaton, can testify and lay the appropriate foundation for such communications.

9


### C. Character Evidence

The Supreme Court has recognized that character evidence – particularly cumulative character evidence – has weak probative value and great potential to confuse the issues and prejudice the jury. See Michelson v. United States, 335 U.S. 469, 480, 486 (1948). The Court has thus given trial courts wide discretion to limit the presentation of character evidence. Id.

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced. It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion. Thus, a defendant may not introduce specific instances of his or her good conduct through the testimony of others. See Michelson, 335 U.S. at 477. On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. See Michelson, 335 U.S. at 481. The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue. See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

At the pretrial conference, counsel for defendant Ferguson alluded to possibly eliciting from defendant Ferguson, or another trial witness, that Ms. Ferguson does not have a prior criminal history. Such testimony should be excluded as improper character

10

evidence, i.e., because she did not break the law previously, she therefore did not break the law now. See United States v. Reese, 666 F.3d 1007, 1020 (7th Cir. 2012) ("[T]hat a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion[s] alleged in the indictment."); see also United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); United States v. Kreimer, 609 F.2d 126, 130 (5th Cir. 1980) ("The question is not how many times they obeyed the law but whether or not on the occasions charged they violated it.").

**D. Cross-Examination of Defendants**

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he or she puts in dispute during direct examination. "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

Defendants' credibility will be crucial if they choose to testify in order to refute the government's showing of knowledge and intent. Indeed, because defendants are the only witnesses with "direct" evidence of their own knowledge and intent, if they take the stand to deny any knowledge of the fraud, their credibility becomes a key issue. Accordingly, cross-examination of defendants about other fraudulent conduct in which they have engaged is necessary for the jury to weigh whether defendant's denial of knowledge and intent is credible given his other actions. As the Ninth Circuit has held, Rule 608(b):

> specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility. Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness.

United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

The prejudicial effect of such evidence, if any, can be addressed by a limiting instruction. The admission of evidence harmful to the defendant's case does not necessarily constitute unfair prejudice. United States v. Fagan, 996 F.2d 1009, 1015 (9th Cir. 1993). Unfair prejudice results from evidence that "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." Id. (internal quotation marks omitted).

Finally, the government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendants, should they testify.

### E. Jury Nullification

As this Court has already held, defendant is not entitled to make any arguments to suggest jury nullification. This includes any evidence or argument about the government's charging decisions as to other fraudulent travelers, or unduly prejudicial evidence regarding co-defendant Bell, i.e., his unrelated firearms trafficking conviction.

It is well-established that a defendant does not have a right to a jury nullification instruction. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992). Having no right to seek jury nullification, defendant has no right to present evidence relevant only to such a defense. Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.

1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant."). And, in any event, under Federal Rules of Evidence 401 and 403, such arguments or evidence are not relevant to any valid defense to the offense charged and will unnecessarily confuse the issues and mislead the jury. Accordingly, such arguments and evidence are improper and warrant exclusion.

## V. CONCLUSION

The government respectfully requests leave to supplement this Trial Memorandum, as necessary.

Dated: March 21, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

        /s/
KEVIN J. BUTLER
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

13